IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA,<br>*Plaintiff,* | ) | Case No. 08 CR 746-10 |
| v. | ) | |
| CHRISTOPHER GONZALEZ,<br>*Defendant*. | ) | Honorable Charles R. Norgle,<br>*Judge Presiding* |

**DEFENDANT CHRISTOPHER GONZALEZ'S**
**POSITION PAPER ON SENTENCING OBJECTIONS**

Defendant Christopher Gonzalez, by counsel, respectfully requests, pursuant to 18 U.S.C. § 3553(a), *Rita v. United States*, 551 U.S. __, 127 S.Ct. 2456 (2007), and *United States v. Booker*, 543 U.S. 220 (2005), that this Honorable Court impose a sentence of sixty (60) months because such a sentence is sufficient, but not greater than necessary, to comply with the purposes of 18 U.S.C. § 3553(a). The defendant (hereinafter "Mr. Gonzalez") states as follows:

## I. Sentencing Request

Mr. Gonzalez pled guilty and accepts full responsibility for the criminality of his conduct. Despite the fact that Mr. Gonzalez has never served a custodial sentence, he faces five-years of incarceration at a minimum. The Presentence Investigation Report ("PSI") advocates an advisory guideline sentence of 57-71 months. Defendant has a criminal history category I. The following illustrates that Mr. Gonzalez is an atypical gang/drug offender. Present conviction aside, Mr. Gonzalez has maintained a longstanding domestic relationship with the mother of his daughters (Trudy Robles) and he has been an exemplary parent. The letters submitted in Mr. Gonzalez's behalf

evidence a young man who has positively influenced a great number of people, from employers to friends to family. Due to Mr. Gonzalez's extraordinary rehabilitative potential, a sentence of 60 months is sufficient but not greater than necessary to meet the § 3553(a) goals of protection of the public, just punishment, respect for the law, and deterrence.

## II. Legal Standard

The Supreme Court and Congress require that the district court sentence in accordance with 18 U.S.C. § 3553(a). *Rita*, 127 S.Ct. at 2469 (explaining that district judges are required "to filter the Guidelines' general advice through 3553(a)'s list of factors"). The Supreme Court held in *Rita* that sentencing judges are required "to 'impose a sentence sufficient, but not greater than necessary to comply with' the basic aims of sentencing" in § 3553(a). *Rita*, 127 S.Ct. at 2463. This is known as 3553(a)'s parsimony provision, and it serves "as the guidepost for sentencing decisions post-*Booker*." *United States v. Ferguson*, 456 F.3d 660, 667 (6th Cir. 2006). One district court explained the parsimony provision:

> The ultimate command of the statute is, after considering these factors, to impose a sentence that is "sufficient, but not greater than necessary, to comply with the purposes set forth in" subsection(a). *Id.* This is the so-called "parsimony provision," which requires district courts to impose the minimum punishment needed to satisfy the purposes of sentencing-just punishment, deterrence, protection of the public and rehabilitation of the defendant.

*United States v. Santoya*, 493 F.Supp.2d 1075, 1077 (E.D. Wis. 2007) (Adelman, J.).

Other commentators have likewise noted that the "parsimony provision" is "not just another 'factor' to be considered along with the other factors set forth in §3553(a) — it sets an independent limit on the sentence a court may impose." David L. McColgin

and Brett G. Sweitzer, *Grid & Bear It*, 29 Champion 50 (2005). *See also*, Richard S. Frase, *Punishment Purposes*, 58 Stan.L.Rev. 67, 83 (2005) ("the structure of section 3553(a), listing the parsimony provision first, suggests that it "sets overall limits on the crime-control and other purposes which follow").

Keeping the statute's parsimony provision in mind, section 3553(a)(2) prescribes the purposes of sentencing:

a) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
b) to afford adequate deterrence to criminal conduct;
c) to protect the public from further crimes of the defendant, and
d) to provide the defendant with needed education or vocational training, medical care, or other correctional treatment in the most effective manner.

18 U.S.C. § 3553(a)(2); *Booker*, 543 U.S. at 260.

Aside from these purposes and the advisory guideline range, courts are required to also consider: (1) the nature and circumstances of the offense and the characteristics and history of the defendant; (2) the kinds of sentences available; (3) the need to avoid unwarranted sentencing disparities among defendants with similar records who have been found guilty of similar conduct; and, (4) the need to provide restitution to the victims of the offense. 18 U.S.C. §3553(a). *See also, United States v. Cunningham*, 429 F.3d 673, 676 (7th Cir. 2005) ("[T]he sentencing judge may not rest on the guidelines alone, but must, if asked by either party, consider whether the guideline sentence actually conforms, in the circumstances, to the statutory factors. . . . He cannot treat all sentences that would fall within the guidelines sentencing range as reasonable per se.").

While the advisory guidelines are an "initial starting point" and "benchmark" in determining a sentence, "the Guidelines are not mandatory, and thus the range of

choice dictated by the facts of the case is significantly broadened." *Gall v. United States*, 128 S.Ct. 586, 602 (citations omitted). In *Gall*, the Supreme Court announced that in addition to considering the guidelines, the "district judge should . . . consider all of the 3553(a) factors to determine whether they support a sentence requested by a party. In so doing, he may *not* presume that the guidelines range is reasonable. He must make an individualized assessment based on the facts presented." *Gall*, at 596-97 (citations omitted). This is so because sentencing courts have a greater familiarity with an individual case and are therefore "in a superior position to find facts and judge their import under § 3553(a) in each particular case." *Kimbrough v. United States*, 128 S.Ct. 558, 574 (2007). *See, e.g. United States v. Wachowiak*, 496 F.3d 744, 751 (7th Cir. 2007) ("We will not substitute our judgment for that of the sentencing court…. the district court is institutionally better situated to make individualized sentencing judgments than an appellate panel.") To vary from the guidelines, sentencing courts need only provide "sufficient justification." *United States v. McGhee*, 512 F.3d 1050, 1051 (8th Cir. 2008); *United States v. McManus*, No. 06-2447, 2008 WL 323233, at *1 (8th Cir. Feb. 7, 2008).

## III. Analysis

### A. Guideline Calculations

Defendant pled guilty pursuant to a plea agreement and therein agreed that his anticipated advisory sentencing guidelines range is 57-71 months. *See*, Plea Agreement, at §9d. The PSI concurs with the parties' guideline calculation and criminal history computation. The plea agreement allows the parties to recommend any sentence within the advisory sentencing guideline range, subject to the statutory

mandatory minimum. Defendant has no objection to the PSR's guideline/criminal history position.[1]

**B. Applying the factors set forth in §3553(a) to Christopher Gonzalez, a 60-month sentence is sufficient.**

In light of the sentencing factors outlined below, Mr. Gonzalez respectfully requests a 60-month sentence.

*1. Characteristics and History of Christopher Gonzalez*

As conveyed to the probation department, Mr. Gonzalez's arrest and subsequent guilty plea provided him with an "eye opener" about the futility and societal harms of gang membership and drug dealing. PSR, at lines 316-18. Despite Mr. Gonzalez's criminal conduct, he enjoys strong family support and in most instances outright admiration. The letters submitted in mitigation depict not only a loving father, but also a present father. Mr. Gonzalez's children recount the occasions where their father took them fishing, helped with homework, grocery shopped, and cooked dinner with the family. His daughter Jennifer writes:

> My dad is very good at math and drawing. I want to learn how to draw like him and be good in math. He always made sure we did our homework. My dad helped me do the planet Jupiter for a school project. When there was no school we would stay up late and eat popcorn and watch movies.

(Letter of Jennifer Gonzalez). Likewise, defendant's middle daughter Sandra states that her father taught her how to catch garter snakes and would "put me back on track when I fell behind in school." (Letter of Sandra Gonzalez). Several of Mr. Gonzalez's nephews describe their uncle's devotion to family, his sense of humor, and his

---

[1] The PSR, at lines 153-56, makes reference to defendant's November 14, 2009 arrest. Those charges were subsequently dismissed. As such, defendant objects to the PSR's inclusion of this arrest.

charitable spirit. Defendant's cousin recounts how Mr. Gonzalez, despite having a "difficult childhood," became a great father who financially supported her during a difficult time. (Letter of Juanita Aviles). Juanita Robles recounts the help Mr. Gonzalez provided to his mother-in-law:

> Chris is very helpful when it comes to my mother Maria Robles. My mother is always needing a hand around the house for fixtures or needing a ride to the grocery store or hardware stores. Never did Chris tell her "No" it was always "yes Maria. … Chris is my mother's right hand when she needs a helping hand.

(Letter of Juanita Robles).

The foregoing and other letters support a finding that Mr. Gonzalez's character greatly transcends his criminal conviction. Moreover, these letters also support a determination that defendant possess a stellar shot at rehabilitation. Indeed, Mr. Gonzalez's co-workers and employer discuss his work ethic and employment capabilities. His boss states:

> Christopher has confirmed a strong work ethic and proven to be very motivated in every task presented to him. He frequently takes initiative to offer suggestions of improving customer service and quality and once given authorization, follows through with his plans and ideas, which have proven successful and beneficial to the company.

(Letter of Hector Sanchez). Given an opportunity for higher education and vocational training while serving a sentence, Mr. Gonzalez will surely blossom into a productive and law-abiding member of society.

*2. Nature of the Offense*

Mr. Gonzalez pled guilty pursuant to a plea agreement and therein admitted fully to the nature of his criminal conduct. Despite his admission of conspiratorial possession of firearms, no evidence suggests that Mr. Gonzalez personally possessed a firearm or

advocated violence. Defendant admits his responsibility for the distribution of just over 500 grams of cocaine and his involvement with the Latin Kings. Being a father, Mr. Gonzalez does not seek to defend gangs or drugs. He does, however, suggest that a five-year sentence is more than sufficient punishment for his wrongdoing.

*3. Protection of the Public and Other Sentencing Considerations*

Despite the nature of the offense, Mr. Gonzalez is not a danger to the public. He has never served a sentence of imprisonment. The PSR reflects mostly a number of traffic related infractions in defendant's background. The fact that Mr. Gonzalez has no prior convictions places him in a category of those least likely to commit further crimes. *See, A Comparison of the Federal Sentencing Guidelines Criminal History Category and the U.S. Parole Commission Salient Factors Score*, p. 14-15 (January 4, 2005) (suggesting that Criminal History Category I does not adequately take into account the lack of recidivism for first time offenders). Likewise, a defendant who has never before been incarcerated generally requires a shorter term of imprisonment to achieve the same goal of protecting the public form further crimes of the defendant. *See, United States v. Baker*, 445 F.3d 987, 992 (7th Cir. 2006); *United States v. Qualls*, 373 F.Supp.2d 873, 877 (E.D.Wisc. 2005) (Adelman, J.). *See also*, U.S. Depart. Of Justice, *An Analysis of Non-Violent Drug Offenders with Minimal Criminal Histories*, Executive Summary (February 4, 1994) (shorter prison sentence in drug cases will deter as well as long sentences); Miles D. Harar, *Do Guidelines Sentences for Low-Risk Drug Traffickers Achieve Their Stated Purpose?*, 7 Fed.Sent.Rep. 22 (1994) (a guidelines sentence has no deterrent value and can actually increase recidivism).

Here, Mr. Gonzalez is 32 years old with no criminal convictions. Additionally, his arrest history is atypical to many similarly charged defendants. Because defendant is in the category of those least likely to re-offend, a prison sentence beyond the statutory minimum is unnecessary to deter future crimes. Finally, Mr. Gonzalez has a history of employment and support of family. These factors also lead to a conclusion that Mr. Gonzalez will not be a recidivist.

## IV. Conclusion

Defendant Christopher Gonzalez respectfully requests the Court to consider his strong personal and family characteristics, his employment history, and his rehabilitative potential in imposing a sentence within the guideline range of 60 months.

Respectfully submitted,

/s/ Todd S. Pugh

BREEN PUGH & ASSOCIATES
53 W. JACKSON BLVD., STE. 1460
CHICAGO, IL 60604
(312) 360-1001

## CERTIFICATE OF SERVICE

I hereby certify that the foregoing was served on February 11, 2010, in accordance with Fed.R.Crim.P.49, Fed.R.Civ.P.5, LR 5.5, and the General Order on Electronic Case Filing (ECF) pursuant to the district court's system as to ECF filers.

/s/ Todd S. Pugh